# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***People v. Lopez*, 2013 IL App (1st) 111819**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES LOPEZ, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-1819 |
| Filed | September 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated driving under the influence of alcohol, the grant of defendant's motion to quash his arrest and suppress evidence was reversed and the cause was remanded for further proceedings, since no seizure occurred for purposes of the fourth amendment when two officers approached on foot while defendant was sitting in a vehicle in a public alley, one officer went to the passenger side, the other to the driver's side, defendant was asked for his driver's license, no guns were drawn, no commanding tone of voice was used, and defendant was not blocked from exiting the scene. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-19165; the Hon. Joseph M. Claps, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal    Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, Amy M. Watroba, and Yvette Loizon, Assistant State's Attorneys, of counsel), for the People.

Abishi C. Cunningham, Jr., Public Defender, of Chicago (Lindsay Hugé, Assistant Public Defender, of counsel), for appellee.

Panel    JUSTICE GORDON delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Hall dissented, with opinion.

**OPINION**

¶ 1    Defendant James Lopez was arrested on October 13, 2010, and charged with aggravated driving under the influence of alcohol. He then filed a pretrial motion to quash arrest and suppress evidence, which was granted by the trial court. The State filed a motion to reconsider, which the trial court also denied. The State then filed this interlocutory appeal in order to appeal that ruling.

¶ 2    The issue before us is whether a person is seized for purposes of the fourth amendment (1) when the person is sitting in a stationary vehicle on a public street or alley, and two officers approach the vehicle on foot, with one officer walking toward the driver's side and one toward the passenger's side, and ask to view the person's driver's license and (2) when there was no evidence that the officers drew their guns, used a commanding tone of voice, or used their vehicle or bodies to block the vehicle from exiting.

¶ 3    In *People v. Cosby*, 231 Ill. 2d 262, 278 (2008), our supreme court held that the fact that two "officers approached the defendant's car, one on each side," did not transform an encounter into a seizure, where there was no indication that "either of the officers touched [defendant's] person, that they displayed their guns, or that [the officers] used language or a tone of voice indicating to [defendant] that he had no choice" but to comply. Our opinion is one of the few appellate court cases to interpret and apply this holding in *Cosby*.

¶ 4    For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

¶ 5                                    BACKGROUND

¶ 6    In his motion to quash arrest and suppress evidence, defendant argued that his arrest was made without an arrest warrant or probable cause, and he asked the trial court to suppress the evidence and statements obtained as a result of the arrest.

¶ 7     At the suppression hearing, Chicago police officer David Salgado testified that on October 13, 2010, he was working with his partner, Officer Esmerelda Perez. They were dressed in civilian clothes and wearing bulletproof vests and duty belts, and driving an unmarked vehicle with "M" license plates. At 1:30 a.m., they responded to an anonymous call concerning a suspicious green pickup truck with two occupants parked for "quite a while" in the alley at approximately 4225 West 24th Place in Chicago. The alley is a "through" alley rather than a dead end. When the officers arrived at that location, they observed one person in a green pickup truck parked behind a garage. Half of the vehicle was on the apron of the garage, and the other half was in the alley, thereby obstructing the public way.[1] At that time, no one was attempting to leave the garage, and Officer Salgado did not know if the garage belonged to defendant or if he had permission from the homeowner to be there. The vehicle was not moving, and there was no traffic in the alley. Officer Salgado testified that it is illegal to park in an alley, but that it is not illegal to sit in your vehicle in the alley. However, he also testified that it is illegal to block the alley, as defendant's vehicle was doing.

¶ 8     The officers approached the vehicle on foot from opposite sides and, as they did so, Officer Salgado noticed that the truck was running and that defendant, who was in the driver's seat, turned the engine off. Officer Salgado asked defendant for his driver's license and asked defendant "what he was doing there."[2] Officer Salgado did not testify that the officers' guns were drawn or that he used a commanding tone of voice. Defendant was unable to produce his driver's license, but provided a state identification card. Officer Salgado testified that it is illegal to be in physical control of a vehicle without a valid driver's license. Defendant also volunteered that he had been drinking. The officer then ordered defendant out of the truck, but, as he exited, he began to fall, so the officer had him return inside.

¶ 9     Once Officer Salgado learned that defendant did not reside at this location, he gave him a citation for blocking the alley. Officer Salgado testified that he issued a total of three tickets: two moving violations, as well as a parking ticket for blocking the alley. However, he did not specify the nature of the two moving violations. Officer Salgado testified that

---

[1]The dissent states that the vehicle was parked halfway "in" a garage and halfway in the alley. *Infra* ¶¶ 37, 43. That statement is factually incorrect. The officer testified that the vehicle was "behind" the garage not "in" it. Specifically, the officer testified that the vehicle obstructed the alley where "half the car was parked on the apron of the garage and half was in the alley." On redirect, when the officer was asked if the vehicle was "behind" the garage, he replied "[t]hat is correct." Thus, the vehicle was not inside the garage but behind it, with half the vehicle on the apron of the garage and half in the alley.

[2]The dissent states that, after requesting defendant's driver's license, the officer "questioned him about what he was doing there at that time of the morning." *Infra* ¶ 37. That statement is factually incorrect. The officer testified that, after requesting defendant's driver's license, he asked only one question and it was simply "what was he doing there." There were no further questions and no questions about the time of day.

Officer Balcar conducted field sobriety tests of defendant and that defendant underwent a Breathalyzer test at the police station. Defendant was then charged with aggravated driving under the influence.

¶ 10    The trial court granted defendant's motion to quash his arrest and suppress evidence. In doing so, the trial court noted the officer's testimony that it was not illegal to sit in a truck in an alley and that the anonymous call did not indicate the nature of the suspicious activity. The trial court concluded that the police could have ticketed the vehicle, but that "to request identification based on that information *** violated the fourth amendment."

¶ 11    The State asked the trial court to reconsider its ruling. In its written motion, the State argued: (1) that the police had probable cause to arrest since they had observed defendant committing a violation, namely, blocking the alley; (2) that the police had a reasonable suspicion to conduct a *Terry* stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968); and (3) that "the police may approach a person seated in a parked vehicle and ask questions without that encounter becoming a seizure."

¶ 12    The trial court denied the State's motion to reconsider, stating:

"There is nothing that I heard in the testimony that would reasonably come to the conclusion that he was illegally parked in that alley. He wasn't parked, he was in the car. The car is running. If they thought there was an issue [they] could simply have him moved. I heard nothing that said he was blocking.

So there is a finding of fact. I find that the observations of the police officer testified to did not violate the ordinance which they indicated was a reason to stop the defendant. There is no question in my mind that this was an afterthought. The motion is denied."

¶ 13    The State filed a timely notice of appeal from the trial court's denial of its motion to reconsider and this appeal follows, pursuant to Illinois Supreme Court Rules 604(a)(1) (eff. July 1, 2006) and 606 (eff. Mar. 20, 2009).

¶ 14                                  ANALYSIS

¶ 15    On this appeal, the State maintains that the trial court erred in granting defendant's motion to quash arrest and suppress evidence. The State argues that there was no fourth amendment violation because there was no seizure but, rather, a consensual encounter when the police asked defendant for his driver's license. Defendant responds that he was seized for purposes of the fourth amendment when the police approached him on both sides of his truck and requested his driver's license.

¶ 16                              I. Standard of Review

¶ 17    On review of a trial court's ruling on a motion to suppress, great deference is accorded to the trial court's factual findings, and the reviewing court will reverse those findings only if they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *People v. Lomax*, 2012 IL App (1st) 103016, ¶ 19 (quoting *Bazydlo*

-4-

*v. Volant*, 164 Ill. 2d 207, 215 (1995)). "The reviewing court is free to make its own assessment of the facts when drawing legal conclusions on the issues presented. [Citation.] Therefore, this court reviews *de novo* the ultimate question of whether or not the motions to quash arrest and suppress evidence should have been granted." *People v. Lomax*, 2012 IL App (1st) 103016, ¶ 19 (citing *People v. Jones*, 215 Ill. 2d 261, 268 (2005)). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 18                                    II. Seizure Under the Fourth Amendment

¶ 19        The issue before us is whether a person is seized for purposes of the fourth amendment: (1) when the person is sitting in a stationary vehicle on a public street or alley, and two officers approach the vehicle on foot, with one officer walking toward the driver's side and one toward the passenger's side, and ask to view the person's driver's license and (2) when there was no evidence that the officers had their guns drawn, used a commanding tone of voice or used their vehicle or bodies to block the vehicle from exiting.

¶ 20        The State maintains that the officers engaged in a consensual encounter with defendant in asking him for identification and asking what he was doing in the alley, through which they obtained information giving them probable cause to seize defendant.

¶ 21        Defendant concedes in his brief to this court that, by the time the officers ordered defendant out of the vehicle, they had probable cause to arrest him based on the facts then known to them, namely, "that defendant was illegally parked in the alley, did not live at that address, was operating a motor vehicle without a valid driver's license, and had been drinking." However, defendant argues that the trial court correctly quashed his arrest because he was seized prior to that point, namely, when the officers approached his vehicle on foot from either side and asked for his driver's license. Because defendant concedes on appeal that probable cause existed at the time he was ordered out of the truck, the question facing this court is whether the initial encounter between the officers and defendant was a seizure under the fourth amendment.

¶ 22        The fourth amendment of the United States Constitution protects against unreasonable searches and seizures. U.S. Const., amend. IV. Under the fourth amendment, an individual is "seized" when an " 'officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *Terry*, 392 U.S. at 19 n.16). "It is well settled that not every encounter between the police and a private citizen results in a seizure." *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006) (citing *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215 (1984)). The Illinois Supreme Court set forth the three tiers of police-citizen encounters in *Luedemann*: "(1) arrests, which must be supported by probable cause; (2) brief investigative detentions, or '*Terry* stops,' which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) encounters that involve no coercion or detention and thus do not implicate fourth amendment interests." *Luedemann*, 222 Ill. 2d at 544 (citing *United States v. Black*, 675 F.2d 129, 133 (7th Cir. 1982), and *United States v. Berry*, 670 F.2d 583, 591 (5th Cir. 1982)). "The third-tier encounters are also known as 'consensual encounters.' "

*Luedemann*, 222 Ill. 2d at 544. "[T]he law clearly provides that a police officer does not violate the fourth amendment merely by approaching a person in public to ask questions if the person is willing to listen." *Luedemann*, 222 Ill. 2d at 549 (citing *United States v. Drayton*, 536 U.S. 194, 200 (2002)).

¶ 23    In *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), the United States Supreme Court held that a person is seized within the meaning of the fourth amendment when a reasonable person would not feel free to leave under the circumstances surrounding the incident. However, in cases where the person's freedom of movement is restrained by some factor other than police conduct, such as when the person is in a parked vehicle, "the appropriate test is whether a reasonable person in defendant's position would have believed he was free to decline [the officer's] requests or otherwise terminate the encounter." *Luedemann*, 222 Ill. 2d at 550-51 (citing *Bostick*, 501 U.S. at 436, and *People v. Gherna*, 203 Ill. 2d 165, 178 (2003)). "Moreover, the test presupposes a reasonable innocent person," and "requires an objective evaluation of police conduct." (Emphasis omitted.) *Luedemann*, 222 Ill. 2d at 551 (citing *Bostick*, 501 U.S. at 438).

¶ 24    The *Mendenhall* Court stated: "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be [(1)] the threatening presence of several officers, [(2)] the display of a weapon by an officer, [(3)] some physical touching of the person of the citizen, or [(4)] the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554. These factors are commonly referred to as the *Mendenhall* factors. "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Mendenhall*, 446 U.S. at 555. In the case at bar, the appellate record shows no evidence that any of the *Mendenhall* factors were present. Defendant claims in his brief to this court that one *Mendenhall* factor was present, namely, the "approach of more than one officer." However, the *Mendenhall* Court referred to "the threatening presence of several officers" (*Mendenhall*, 446 U.S. at 554), and our supreme court has held that "the presence of only two officers, without more, is not a factor that would indicate a seizure occurred" (*Cosby*, 231 Ill. 2d at 278). Thus, the fact that there were two officers, by itself, would not transform an otherwise consensual encounter into a seizure.

¶ 25    The facts of the case at bar are similar to those in *Luedemann*. In *Luedemann*, the initial encounter was found to be consensual based on the facts that the officer drove past the defendant's vehicle so as not to block him, did not use coercive language or tone of voice, did not touch the defendant, did not display his weapon, used his flashlight as he approached the defendant only because it was night time, and simply asked the defendant what he was doing there and for his identification. *Luedemann*, 222 Ill. 2d at 534, 565. Our supreme court found that no seizure occurred at that time, and that it was only after the officer observed signs of intoxication which included slurred speech, the smell of alcohol, and an open bottle in the vehicle, that a reasonable, articulable suspicion was provided for the subsequent seizure. *Luedemann*, 222 Ill. 2d at 565-66.

¶ 26    Similarly, in the case at bar, Officer Salgado testified that he responded to an anonymous call regarding a suspicious vehicle and observed defendant sitting in a pickup truck in the

alley behind 4225 West 24th Place. He and his partner then approached and asked defendant for his driver's license and asked what he was doing there. As in *Luedemann*, this consensual encounter led to a reasonable, articulable suspicion that defendant was intoxicated while in control of a motor vehicle, where he admitted that he had been drinking and was unable to exit the vehicle without falling. *Luedemann*, 222 Ill. 2d at 566.

¶ 27    The simple fact that the officers approached on different sides of the vehicle did not transform this consensual encounter into a seizure. Our supreme court explicitly rejected that argument in *Cosby*. In *Cosby*, our supreme court held that the fact that two "officers approached defendant's car, one on each side," did not transform an otherwise consensual encounter into a seizure, where there was no indication that "either of the officers touched [defendant's] person, that they displayed their guns, or that [the officers] used language or a tone of voice indicating to [defendant] that he had no choice" but to comply. *Cosby*, 231 Ill. 2d at 278.

¶ 28    The *Cosby* court distinguished *Gherna*, in which our supreme court had found that the defendant was seized when two officers positioned themselves and their bicycles in such a way as to prevent the defendant from either exiting her vehicle or driving away and then questioned the defendant about her identity and asked her to exit her vehicle. *Cosby*, 231 Ill. 2d at 279; *Gherna*, 203 Ill. 2d at 168-71. The *Cosby* court distinguished *Gherna* on the ground that, in *Cosby*, there was no evidence that the officers were trying to "box" in the defendant's vehicle. *Cosby*, 231 Ill. 2d at 280. Thus, the fact that two officers approached a vehicle on foot from opposite sides, as happened in the case at bar, does not transform an encounter into a seizure, without further evidence that the officers were boxing in the vehicle. *Cosby*, 231 Ill. 2d at 280.

¶ 29    In the case at bar, the record shows no indication that Officer Salgado and Officer Perez were trying to box in defendant's vehicle. Our case is further distinguishable from *Gherna* because, in the case at bar, defendant concedes that, by the time the officers asked him to exit his vehicle, they had probable cause. By contrast, in *Gherna*, the fact that the officers directed the defendant to exit her vehicle was one of the circumstances that led our supreme court to conclude a seizure had occurred. *Gherna*, 203 Ill. 2d at 183.

¶ 30    In light of our supreme court's holding in *Cosby*, we find that the initial contact between defendant and the police officers was inoffensive and did not, as a matter of law, amount to a seizure. *Cosby*, 231 Ill. 2d at 281-82; *Luedemann*, 222 Ill. 2d at 553 (citing *People v. Murray*, 137 Ill. 2d 382, 390-91 (1990) (noting that "[i]n the absence of [the *Mendenhall* factors or] some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person" (internal quotation marks omitted))).

¶ 31    Defendant cites *People v. Cash* for the proposition that "a seizure occurs either where physical force is used on the suspect or, absent the use of physical force, where the suspect submits to the assertion of authority." *People v. Cash*, 396 Ill. App. 3d 931, 943 (2009) (citing *Village of Mundelein v. Thompson*, 341 Ill. App. 3d 842, 848 (2003)). However, we note that *Cash* is factually distinguishable from the case at bar. In *Cash*, police officers were surveilling the home of a man and waiting to execute a search warrant for the house. *Cash*,

396 Ill. App. 3d at 933. The police had not yet executed the search warrant due to a concern about firearms in the house. *Cash*, 396 Ill. App. 3d at 933-34. When the man left his home, the police followed him in three unmarked police vehicles without an arrest warrant for him or a search warrant for his vehicle. *Cash*, 396 Ill. App. 3d at 934. The man then parked and the defendant joined him in his vehicle. *Cash*, 396 Ill. App. 3d at 934. Although the police observed no traffic, parking or other violations committed by the man or the defendant, the officers pulled in behind the vehicle and activated a siren. *Cash*, 396 Ill. App. 3d at 934, 941. The reviewing court held that an improper seizure occurred when the defendant and the other man submitted to this assertion of authority by the police. The court found that there were no grounds to support the seizure and therefore granted the motion to suppress evidence discovered after the seizure. *Cash*, 396 Ill. App. 3d at 946. However, in the case at bar, the officers never activated a siren and asked defendant only for identification and what he was doing in the alley.[3] This is in stark contrast to *Cash*, where the police not only activated a siren, but also asked defendant and the other man to exit the vehicle. *Cash*, 396 Ill. App. 3d at 941. Since the facts of *Cash* and our case are so different, we do not find defendant's citation to *Cash* persuasive.

¶ 32    In sum, the case at bar is similar to *Luedemann* in that none of the *Mendenhall* factors were present. *Luedemann*, 222 Ill. 2d at 553. In addition, our supreme court has already held that the fact that two officers approached defendant from opposite sides of the vehicle, absent other evidence, does not transform a consensual encounter into a seizure. *Cosby*, 231 Ill. 2d at 278. Therefore, the trial court erred in granting defendant's motion to quash arrest and suppress evidence.

¶ 33                                    CONCLUSION

¶ 34    For the foregoing reasons, we reverse the trial court's order granting defendant's motion to quash arrest and suppress evidence and remand this case for further proceedings consistent with this opinion.

¶ 35    Reversed and remanded.

¶ 36    JUSTICE HALL, dissenting.

¶ 37    I respectfully dissent for two reasons. First, contrary to the majority, I believe defendant was "seized" within the meaning of the fourth amendment when police officer Salgado and his partner approached defendant's parked pickup truck and began questioning him. The

---

[3]The State argues that the police had probable cause to believe that defendant had violated a municipal parking ordinance by parking his truck in a manner that blocked the alley. However, the trial court made a "finding of fact" that the State presented no evidence that defendant was illegally parked in the alley. The trial court made this finding despite Officer Salgado's uncontradicted testimony that defendant's vehicle "was obstructing the alley." However, since we find that there was no seizure, we do not reach the issue of whether the trial court's factual finding was against the manifest weight of the evidence. *Luedemann*, 222 Ill. 2d at 542.

pickup truck was parked halfway in a garage and halfway in the alley. When the officers exited their unmarked squad car and approached defendant's vehicle from both sides, he turned off the engine. The officers asked defendant for his driver's license and questioned him about what he was doing there at that time of the morning.

¶ 38    A person is seized when, considering all the facts and circumstances surrounding the incident, a reasonable person would not feel free to leave. *People v. Brownlee*, 186 Ill. 2d 501, 517 (1999). Based on the totality of the circumstances in this case, a reasonable person in defendant's position would not have felt free to leave and discontinue contact with the police. Defendant's encounter with the police was akin to a traffic stop, which constitutes a seizure for fourth amendment purposes. *People v. Bunch*, 207 Ill. 2d 7, 13-14 (2003).

¶ 39    Second, I believe defendant's encounter with the police was unjustified at its inception. "As a general rule, all seizures must be reasonable, and the reasonableness of a seizure depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference from law enforcement ***." *Brownlee*, 186 Ill. 2d at 517-18 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). In determining whether a particular search and seizure was reasonable, a court must first inquire whether the officer's action was justified at its inception. *People v. Hunt*, 188 Ill. App. 3d 359, 361 (1989).

¶ 40    In order for a search to be justified at its inception, an officer must have an objectively reasonable, articulable suspicion that the detainee committed or is about to commit a crime. See *People v. Harper*, 237 Ill. App. 3d 202, 205 (1992); *People v. Haywood*, 407 Ill. App. 3d 540, 543 (2011). A reasonable, articulable suspicion is " 'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). A police officer's level of suspicion need not rise to the level of probable cause, but it must be more than a hunch. *People v. Close*, 238 Ill. 2d 497, 505 (2010).

¶ 41    "A tip from an anonymous person may supply the requisite quantum of suspicion ***, provided the information bears some indicia of reliability." *People v. Henderson*, 2013 IL 114040, ¶ 26. "The reliability of any given informant's tip as it relates to a reasonable-suspicion analysis must be determined in a case-by-case basis." *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 20.

¶ 42    In this case, the anonymous telephone tip did not provide police with a reasonable, articulable suspicion of criminal activity necessary to justify confronting defendant and questioning him in the manner they did. At the time officers seized defendant, they had only been told by dispatch that there was a suspicious green pickup truck, with two occupants, parked in the alley at 4225 West 24th Place. When the officers arrived at the scene, they observed the pickup truck, with one occupant, parked halfway in a garage and halfway in the alley.

¶ 43    The problem for the State is that the officers did not observe any illegal activity and the anonymous telephone tip asserted no illegal activity. Reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000).

¶ 44    In sum, I believe defendant was seized within the meaning of the fourth amendment. I further believe the seizure was unjustified at its inception because the facts failed to support a reasonable, articulable suspicion that defendant was engaged or about to be engaged in criminal conduct. Accordingly, I would affirm the trial court's judgment granting defendant's motion to quash arrest and suppress evidence.