# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Colquitt, 2013 IL App (1st) 121138**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GARRY COLQUITT, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1138 |
| Filed<br>Rehearing denied | September 20, 2013<br>October 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in granting defendant's motion to quash his arrest and suppress the evidence of his statements and test results in a prosecution for DUI, notwithstanding defendant's contention that he was illegally seized when an officer sounded his siren and pulled behind defendant's parked car without probable cause, since the record showed the officer had just made a left turn and was headed east when he saw defendant's car parked in the roadway headed west, the officer activated his lights and siren, made a "U-turn" and pulled behind defendant's vehicle, he approached the passenger side, asked defendant some questions and conducted field sobriety tests before arresting him and taking him to the police station, and under the circumstances, the activation of the siren and lights was not a seizure, but was necessary to make the "U-turn," and no seizure occurred until the officer discovered evidence that defendant was intoxicated and developed probable cause to justify an arrest. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. YT-242-966-968; the Hon. Noreen Daly, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Anthony O'Brien, and Iris G. Ferosie, Assistant State's Attorneys, of counsel), for the People. |
|---|---|
| | Michael J. Pelletier, Alan D. Goldberg, and Christopher R. Bendik, all of State Appellate Defender's Office, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion. Justices Lampkin and Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant Garry Colquitt was charged with driving under the influence (DUI) and blocking a roadway. Following a suppression hearing, the trial court granted defendant's pretrial motion to quash his arrest and suppress evidence of his statements and field sobriety and Breathalyzer test results. The trial court suppressed the arrest and the evidence on the grounds: (1) that defendant was seized, for fourth amendment purposes, at the moment when a police vehicle pulled behind defendant's vehicle, which was parked on the road, in a lane of traffic and without hazard lights; (2) and that the officer lacked either reasonable suspicion or probable cause to justify this alleged seizure.

¶ 2    On this appeal, the State argues: (1) that a seizure did not occur until a later point in time when the arresting officer noticed a strong smell of alcohol about defendant and observed that defendant's eyes were bloodshot and his speech was slurred; and (2) that, even if a seizure did occur at the moment when the officer pulled his vehicle behind defendant's parked vehicle, the officer had probable cause to arrest defendant for a traffic violation committed in his presence, namely, the blocking of the roadway. The State further argues that any alleged seizure was also justified under the community caretaking exception.

¶ 3    For the following reasons, we conclude that no seizure occurred when the police vehicle pulled behind defendant's parked vehicle. Since we decide the appeal on this ground, we do not reach the State's remaining arguments.

¶ 4                                    BACKGROUND

¶ 5    On May 3, 2011, the State charged defendant with DUI and with stopping, standing or parking upon a roadway outside of a business or residence district. 625 ILCS 5/11-501(a), 11-1301(a) (West 2010). Section 11-1301(a) states in full:

        "Outside a business or residence district, no person shall stop, park or leave standing any

-2-

vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and clear view of such stopped vehicle shall be available from a distance of 200 feet in each direction upon such highway." 625 ILCS 5/11-1301(a) (West 2010).

¶ 6        Defendant moved to quash the arrest and suppress evidence obtained as a result of his arrest. On January 26, 2012, the trial court held a suppression hearing. At the hearing, the evidence consisted of: (1) the arresting officer's testimony; (2) a video recording from the arresting police officer's vehicle; and (3) an audio police dispatch recording.

¶ 7        Officer Wood[1] of the Tinley Park police department testified that he had been a police officer for six years with the Tinley Park police department. On May 2, 2011, at 11:50 p.m., he was working alone in a marked police vehicle and driving southbound on 80th Avenue in Tinley Park when he observed defendant's vehicle traveling westbound on 183rd Street.

¶ 8        Wood testified he then made a left-hand turn on to 183rd Street heading eastbound. 183rd Street consisted of four lanes of traffic, two eastbound and two westbound lanes, which were separated by a median. Wood traveled less than a block on 183rd Street when he observed, in his rearview mirror, defendant's vehicle stopped in the roadway blocking the right-hand lane of 183rd Street. Wood completed a "U-turn" and parked behind the vehicle, which was parked 75 feet from the intersection of 80th Avenue and 183rd Street.

¶ 9        Wood testified that before he approached defendant's parked vehicle he advised dispatch of the vehicle's license plate number and location. He then approached the passenger side of the vehicle. He had a conversation with defendant, who was seated on the driver's side of the vehicle, and then advised dispatch of defendant's driver's license number. Defendant informed Wood that he was parked in the road because he dropped his wallet. Shortly thereafter two additional police officers arrived on the scene, Officer Dubish and Sergeant Popp.[2] Wood asked defendant to exit his vehicle and instructed defendant to complete various field sobriety tests. After defendant completed the tests, Wood placed defendant under arrest for DUI, and Sergeant Popp called for a tow truck to remove defendant's vehicle.

¶ 10       Wood testified that defendant completed a Breathalyzer test once they arrived at the police station which showed defendant's blood alcohol content was 0.169. He asked defendant questions from the alcohol influence report and defendant answered only some of the questions.

¶ 11       On cross-examination, Wood testified that he was traveling eastbound on 183rd Street and defendant was traveling westbound on 183rd Street. Defendant had just passed an intersection that had traffic lights. Wood thought defendant may have driven through a red light, but he was not certain so he continued driving. He made a left-hand turn, looked in his rearview mirror and then observed defendant parked, blocking the right-hand lane of 183rd

---

[1]Officer Wood's first name is not in the appellate record.

[2]Officer Dubish's and Sergeant Popp's first names are not in the appellate record.

Street. Defendant's vehicle did not have its hazard lights on and was completely stopped.

¶ 12    Wood testified that when he approached defendant's parked vehicle he noticed a strong odor of liquor and observed that defendant's eyes were bloodshot and his speech was slurred. Wood asked defendant where he was traveling to and defendant informed him he was traveling home to Country Club Hills.

¶ 13    Wood testified that Country Club Hills was east of where defendant was parked and defendant was traveling westbound. Defendant informed him that he was traveling from Jameson's in Frankfort or lower Mokena. Wood observed that defendant appeared confused and could not respond to all of his questions. On redirect, Wood was asked whether he "blew" his siren, and Wood testified that he had not viewed the video and he did not recall.

¶ 14    The defense then introduced the audio dispatch tape and the videotape from Officer Wood's police vehicle, which included audio. The videotape depicts Officer Wood making a U-turn. A siren can barely be heard in the background and there appear to be some colored lights in the corners of the tape. Thus, the tape appears to depict Officer Wood activating his siren and emergency lights, as he made a U-turn across four lanes of traffic at night. After the officer parked his vehicle behind defendant's parked vehicle, there is a loud sound of distortion as the officer turned on his microphone and talked to his dispatcher. At that point, the siren was off, and the subsequent conversation between the officer and defendant can be heard clearly without a siren in the background.

¶ 15    The videotape further depicts Officer Wood providing the police dispatcher with his location and defendant's license plate number. Officer Wood then approached defendant's vehicle from the passenger side and began a conversation with defendant, stating that he was "wondering why you stopped in the roadway here." Defendant did not respond. Officer Wood asked defendant where he was traveling from several times and defendant did not respond. Defendant later answered that he was traveling from Jameson's in Frankfort. Defendant is heard stating that he was on his way home to Country Club Hills in slurred speech. Wood asked defendant, "Do you realize you are going the wrong way?" Defendant responded in the negative. Defendant is heard stating: "The reason I am stopped is I dropped my wallet." The video depicts Officer Wood asking defendant for his license, registration and insurance information, and then providing defendant's driver's license number to the police dispatcher. Shortly thereafter, another officer arrived on the scene. Wood is heard informing the other officer that defendant was "borderline through the red light," and that when Wood looked back, defendant's vehicle was stopped in the roadway so he approached to check on the vehicle.

¶ 16    The videotape displays Wood asking defendant to exit the vehicle and stating, "I need to see if you are okay to drive." Wood is heard asking defendant if he had anything to drink that night. Defendant responded that he had one or two drinks. Wood asked defendant when he began drinking that night and defendant responded that he began drinking around 10:30 or 11 p.m. Wood asked defendant, "I would like you to do a couple [of] tests for me, okay?" and defendant responded, "Sure." The video then depicts Wood conducting field sobriety tests with defendant. Wood instructed defendant to follow an object with his eyes, complete the one-leg-stand test and the walk-and-turn test. Following the tests, Wood can be heard

stating that based on the results of the tests and defendant's statements he was placing defendant under arrest for DUI. Wood walked defendant to his police vehicle and is then heard asking defendant, "I'm just going to pat you down, okay?" to which defendant responded, "Okay." Wood is then observed driving defendant to the police station and defendant is heard saying "please, anything but this," to which Wood responded that there was nothing he could do and he stated: "Hang on, I'll talk to you when we get in there. I got to read you your rights first."

¶ 17     The dispatch tape coincided with the video footage. On the dispatch tape, Officer Wood is heard providing dispatch with his location, defendant's license plate number, and defendant's driver's license number. The dispatcher provided Officer Wood with information regarding defendant's criminal history, and Wood indicated that defendant was "most definitely a 55." Another officer is heard stating that Wood had "one in custody for a 10-55" and that they needed a tow truck.

¶ 18     At the close of the evidence and after closing arguments, the trial court granted defendant's motion to quash the arrest and suppress the evidence. The trial court found a seizure occurred when Officer Wood activated his emergency lights and sounded his horn, since defendant's vehicle was stopped momentarily and "not blocking anything." The trial court found: "All he was[,] was parked along the side of the road." On appeal, the State argues that the trial court's factual finding–that defendant was "not blocking anything" and "was parked along the side of the road"–was in error. However, since we conclude for reasons explained below that there was no seizure, we do not reach the question of whether this factual finding by the trial court was against the manifest weight of the evidence.

¶ 19     In support of its ruling, the trial court also stated: "[the officer] blows the horn and the blowing of the horn is one of the significant features here." However, the record reveals no evidence that the police officer pressed his vehicle's horn. The record consists of the officer's testimony and the tapes of the incident. As for the officer's testimony, he did not testify that he sounded his vehicle's horn. As for the videotape, although it contains the sound of distortion as the officer switched on his microphone and spoke with his dispatcher, it does not reveal the sounding of a horn.

¶ 20     However, since the parties and the trial court refer to the almost simultaneous activation of lights and a horn, it appears that, by the word "horn," the parties and the trial court are referring to the vehicle's siren, which is just barely audible on the videotape. For example, the trial court stated: "he [the officer] puts on lights and a horn." Also, the trial court stated, "he blew the horn, he blew, whatever you call that horn, when he pulled him over." Although the siren is audible, the parties do not use the word "siren," making it apparent that they are using the word "horn" to refer to the siren.

¶ 21     The trial court stressed that the use of a siren was the most significant factor for finding a seizure. The trial court stated: "Now it might be arguable that he put the lights on for a safety standpoint for both he [sic] and the defendant's car, but it was clear that he blew the horn, he blew, whatever you call that horn, when he pulled him over before he ever approached a car, before he ever knew what was going on." The trial court reiterated: "I don't think you blow a horn at that time, and I think it is after that point that he is not free to

leave." The trial court concluded, stating: "The car pulls over[,] not blocking anything and he comes back and he puts on lights and a horn. It's a seizure. The court is granting the motion." In sum, the most significant fact to the trial court for finding a seizure was the officer's use of a siren. The officer's use of emergency lights was less of a factor for the trial court, since the trial court acknowledged that the lights were "arguably" needed from "a safety standpoint."

¶ 22    The State filed a motion to reconsider the ruling. Arguing the motion, the prosecutor stated: "he had every reason for his safety to blow the horn. Just by blowing the horn on its own does not amount to a seizure." The trial court denied the motion, stating: "It was because it was a seizure when he turned on that horn and blew those lights before he knew anything as counsel, defense counsel has indicated." The trial court added: "It is questionable whether he could see from his vantage point the car was pulled over to the side, but even if it were, too, if you look at the statute again on that, it is extremely questionable whether he was in violation of any traffic code."

¶ 23    After hearing argument, the trial court denied the State's motion to reconsider and the State filed a certificate of substantial impairment and a timely notice of appeal. This appeal followed.

¶ 24                                              ANALYSIS

¶ 25    On appeal, the State argues that the trial court erred as a matter of law in granting defendant's motion to quash the arrest and suppress evidence of defendant's statements and field sobriety and Breathalyzer test results because: (1) a seizure did not occur until the arresting officer observed evidence of defendant's intoxication, at which point the arresting officer had probable cause to arrest defendant; (2) even if the officer's activation of his emergency equipment is considered a seizure, it was justified under the community caretaking exception; and (3) the arresting officer had probable cause to arrest defendant for a traffic violation committed in his presence, namely, parking on a roadway outside of a business or residence district.

¶ 26    For the reasons explained below, we conclude that defendant was not seized until the officer had observed evidence of defendant's intoxication. Since we decide the appeal on this ground, we do not reach the State's remaining arguments.

¶ 27                                      I. Standard of Review

¶ 28    A review of a trial court's ruling on a motion to quash arrest and suppress evidence presents mixed questions of fact and law. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). When reviewing a trial court's ruling on a motion to quash arrest and suppress evidence, we accord great deference to the trial court's factual findings. *People v. Close*, 238 Ill. 2d 497, 504 (2010). We will reverse a trial court's findings only if they are against the manifest weight of the evidence. *People v. Bunch*, 207 Ill. 2d 7, 13 (2003). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 29    However, we review *de novo* the trial court's ultimate legal ruling as to whether suppression was warranted. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004); *In re Mario T.*, 376 Ill. App. 3d 468, 472 (2007) ("Our focus *** is on the legal question of the justification of the stop and frisk so as to warrant the denial of the *** motion to suppress ***."). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). The ultimate legal question in the case at bar is whether defendant's statements and field sobriety and breathalyzer test results should have been suppressed, which is a question that we consider *de novo*. *Mario T.*, 376 Ill. App. 3d at 472-73 ("whether the motion should have been granted necessarily turns on a reviewing court's 'own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted' " (quoting *Pitman*, 211 Ill. 2d at 512)).

¶ 30                                      II. Timing of the Seizure

¶ 31    When a defendant files a motion to quash his arrest and suppress evidence, claiming that there was an illegal search or seizure, the defendant has the burden of demonstrating the illegal search or seizure. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). The timing of the seizure is a critical issue in this case. The defense argues that defendant was seized at the moment when Officer Wood activated his emergency equipment and parked behind defendant. The State argues that a seizure did not occur until Officer Wood observed evidence of defendant being under the influence of liquor, at which point Officer Wood had probable cause to arrest defendant.

¶ 32    For purposes of the fourth amendment, an individual is "seized" when an officer " 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.' " *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). " 'The appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.' " *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). The inquiry "presupposes a reasonable *innocent* person." (Emphasis in original.) *Luedemann*, 222 Ill. 2d at 551 (citing *Bostick*, 501 U.S. at 434-35). Illinois courts will consider the totality of the circumstances in determining whether or not a seizure occurred. *Luedemann*, 222 Ill. 2d 530. The circumstances Illinois courts will consider when deciding if a seizure occurred include the *Mendenhall* factors, which were set forth in a United States Supreme Court case of the same name. *People v. Cosby*, 231 Ill. 2d 262, 274 (2008) (citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). In *Mendenhall*, the United States Supreme Court held:

   " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Cosby*, 231

Ill. 2d at 274 (quoting *Mendenhall*, 446 U.S. at 554).

¶ 33   The Illinois Supreme Court applied the *Mendenhall* factors in *Luedemann* and found that an officer did not seize the defendant until he had observed evidence that the defendant was under the influence of liquor. *Luedemann*, 222 Ill. 2d at 565. In *Luedemann*, at 2:40 a.m., a police officer noticed the defendant, legally parked, sitting in his vehicle smoking a cigarette. *Luedemann*, 222 Ill. 2d at 534. The officer drove closer to the defendant's vehicle and observed the defendant reach toward the floorboard of his vehicle. *Luedemann*, 222 Ill. 2d at 534. As the officer drove past the defendant's vehicle, the defendant slumped down in his seat on the driver's side of the vehicle. *Luedemann*, 222 Ill. 2d at 534. The officer parked in the center of the street and approached the defendant's vehicle from the rear driver's side with a flashlight. *Luedemann*, 222 Ill. 2d at 534. As the officer approached, the defendant removed the keys from the ignition and the officer noticed an uncapped, brown bottle on the passenger-side floorboard of the defendant's vehicle. *Luedemann*, 222 Ill. 2d at 534. The officer asked the defendant what he was doing there and for his identification. *Luedemann*, 222 Ill. 2d at 534. The defendant indicated that he was waiting for his girlfriend to return home but he did not recall the address. *Luedemann*, 222 Ill. 2d at 534. The officer observed that the defendant's speech was slurred and his eyes were bloodshot and the officer could smell liquor on the defendant's breath. *Luedemann*, 222 Ill. 2d at 535. Having observed evidence that the defendant was under the influence of liquor, the officer radioed for another officer, asked the defendant to exit his vehicle and instructed the defendant to complete various field sobriety tests, which indicated to the officer that the defendant was under the influence of liquor. *Luedemann*, 222 Ill. 2d at 535. The defendant filed a motion to quash his arrest and suppress the evidence, which the trial court granted and the appellate court affirmed. *Luedemann*, 222 Ill. 2d at 532-33.

¶ 34   The Illinois Supreme Court reversed and found that no seizure occurred until after the officer had a reasonable suspicion that the defendant was under the influence of liquor and had operated a motor vehicle. *Luedemann*, 222 Ill. 2d at 566. The court reasoned that, in viewing the officer's conduct objectively, he did not curtail the defendant's liberty through the use of physical force or a show of authority. *Luedemann*, 222 Ill. 2d at 565. The court reasoned that the officer approached the defendant's vehicle in a nonoffensive manner, meaning he did not have his weapon drawn, he did not touch the defendant, he did not use a tone of voice that indicated compliance was necessary, and he did not activate his overhead lights. *Luedemann*, 222 Ill. 2d at 554. The court also found that there was no seizure because the officer parked his vehicle in the middle of the street and did not block the defendant's vehicle from leaving. *Luedemann*, 222 Ill. 2d at 560. The court also found that the officer's use of a flashlight was not a seizure and was merely a practical necessity because it was dark. *Luedemann*, 222 Ill. 2d at 563. The court held the officer did not effectuate a seizure until after he observed evidence of the defendant being under the influence of liquor because no reasonable person would have felt that they had to comply with the officer's requests before that point. *Luedemann*, 222 Ill. 2d at 565.

¶ 35   Furthermore, in *Cosby* our supreme court found that the simple fact that that two "officers approached defendant's car, one on each side," did not transform an encounter into a seizure, where there was no indication that "either of the officers touched [defendant's]

-8-

person, that they displayed their guns or that [the officers] used language or a tone of voice indicating to [defendant] that he had no choice" but to comply. *Cosby*, 231 Ill. 2d at 278.

¶ 36    The *Cosby* court distinguished the case of *People v. Gherna*, 203 Ill. 2d 165 (2003), in which our supreme court found defendant was seized when two officers positioned themselves and their bicycles in such a way as to prevent the defendant from either exiting her vehicle or driving away; and then questioned the defendant about her identity and asked her to exit her vehicle. *Cosby*, 231 Ill. 2d at 279. The *Cosby* court distinguished *Gherna* on the ground that, in *Cosby*, there was no evidence that the officers were trying to "box" in defendant's vehicle. *Cosby*, 231 Ill. 2d at 280.

¶ 37    In the case at bar, the totality of Officer Wood's conduct, before he observed evidence that defendant was under the influence of liquor, was not objectively coercive. While unlike *Luedemann*, in this case, Officer Wood did activate his emergency lights, he did so as he cut across four lanes of traffic at night. His use of emergency lights was similar to the use of a flashlight in *Luedemann*, in that both were prompted by necessity: the *Luedemann* officer's need to see at night; and the necessity of the officer in the case at bar to be seen by others at night. *Luedemann*, 222 Ill. 2d at 563 (use of flashlight at night was not a seizure but a practical necessity). In addition, the Illinois Supreme Court has not yet addressed whether an officer's activation of his emergency lights automatically constitutes a seizure. *People v. McDonough*, 239 Ill. 2d 260, 271 (2010) ("We need not and do not decide whether a police officer's use of emergency lights, either alone or combined with other law enforcement techniques, always constitutes a seizure within the fourth amendment.").[3]

¶ 38    In the case at bar, defendant was already voluntarily parked and did not stop because he observed Officer Wood's emergency lights. The officer activated his emergency lights only after defendant had parked in the roadway without his hazard lights on and while the officer was making a U-turn. A reasonable person would not have believed that he had to comply with Officer Wood's requests, simply because the officer activated his emergency lights while making a U-turn across four lanes of traffic at night. Officer Wood's conduct after exiting his vehicle, but before observing evidence of intoxication, did not rise to the level of a seizure where he did not draw his weapon, did not touch defendant, and did not use language or a tone of voice to indicate defendant must comply with his requests. *Luedemann*, 222 Ill. 2d at 554; *Cosby*, 231 Ill. 2d at 278. Officer Wood parked behind defendant's vehicle

---

[3]In *People v. Daniel*, 2013 IL App (1st) 111876, this court held that, when a police officer activated the emergency equipment on his marked police vehicle and forced a moving vehicle to stop at the curb, those actions constituted a *Terry* stop. However, the case at bar is distinguishable because it does not involve the stop of a moving vehicle but rather concerns an already stopped vehicle that was parked in the road. In *People v. Cash*, 396 Ill. App. 3d 931, 949 (2009), the appellate court held that the activation of emergency lights and siren constituted a seizure. However, that case is distinguishable, because it involved three police vehicles, it occurred during the daytime, and the use of emergency equipment was not prompted by any safety concerns. *Cash*, 396 Ill. App. 3d at 935, 940. By contrast, in the case at bar, the officer had safety concerns with respect to other vehicles coming up in the dark, upon a police vehicle making a U-turn across multiple lanes of traffic and upon defendant parked without hazard lights on a roadway.

and did not block defendant from exiting his vehicle. *Cosby*, 231 Ill. 2d at 280 (no evidence that officers were trying to "box" in defendant's vehicle).

¶ 39 In one line in his brief, defendant argues that the officer also "shone a spotlight onto [defendant's] vehicle." However, there was no testimony about a spotlight, and the arguments and ruling below concerned solely whether the officer's activation of his emergency lights and "horn," or siren, constituted a seizure. In addition, defendant concedes in his brief to this court that the trial court found a seizure based on the officer's "activation of his emergency lights and blowing of his horn." Thus, the question on appeal before us is whether, under the singular facts and circumstances before us, the activation and the prompt deactivation of emergency equipment constituted a seizure for fourth amendment purposes.

¶ 40 For the reasons discussed above, we conclude that the officer's brief activation of his emergency lights and siren, as he crossed over four lanes of traffic at night to make a U-turn, was necessitated, as the trial court observed, by safety concerns and did not, by itself, constitute a seizure. We observe that the officer was not making a stop of a moving vehicle but rather was approaching to investigate the presence of an already stopped vehicle, in a roadway and without hazard lights. Under these unique facts and circumstances, we cannot find a seizure for fourth amendment purposes. Defendant does not argue on appeal that the officer lacked probable cause to arrest at the point when the officer asked defendant to exit his vehicle, nor could he. Thus, we must affirm.

¶ 41                                                    CONCLUSION

¶ 42 On appeal, the State argues that the trial court erred as a matter of law in granting defendant's motion to quash defendant's arrest and suppress evidence of defendant's statements and field sobriety and Breathalyzer test results because: (1) a seizure did not occur until the arresting officer observed evidence of defendant driving while being under the influence of liquor, at which point the arresting officer had probable cause to arrest defendant; (2) even if a seizure did occur when the arresting officer activated his emergency lights it was justified under the community caretaking exception; and (3) the arresting officer had probable cause to arrest defendant for a traffic violation committed in his presence.

¶ 43 Since we are persuaded, for the reasons discussed above, that no seizure occurred until the officer had probable cause to arrest, we reverse and remand for further proceedings.

¶ 44 Reversed and remanded.