NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230205-U

NO. 4-23-0205

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 17, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Jo Daviess County |
| JOHN S. HEBERT, | ) | No. 21CF7 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin J. Ward, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The trial court's finding that defendant violated the terms of his probation was not against the manifest weight of the evidence and (2) the court's statement of defendant's conduct during probation did not amount to plain error.

¶ 2   In August 2021, defendant John S. Hebert entered a negotiated guilty plea to one count of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2020)) and, in accord with the agreement, he received a sentence of 30 months' probation and 180 days' imprisonment. In November 2021, the State filed a multicount petition to revoke his probation. The trial court found the State had proved defendant violated his probation by failing to report for a mandatory drug test on September 30, 2021. The court imposed a sentence of five years' imprisonment and one year of mandatory supervised release.

¶ 3   In this appeal, defendant initially contends that plain error occurred when the trial court stated, "I do remember the evidence [at] the probation revocation hearing[;] you were not

complying with a single term of probation." He contends this was a significant misstatement of the evidence and thus violated his right to due process. Second, he contends the evidence of the probation violation was insufficient because his probation officer testified he left defendant a voicemail message to appear for the drug test but did not testify that voicemail was a regular method he used to communicate with defendant. We hold that defendant has not shown that any error was clear or obvious and thus has not met his burden to show there was plain error. We further hold that the evidence was sufficient to show defendant violated the terms of his probation. We affirm.

¶ 4                              I. BACKGROUND

¶ 5        In January 2021, defendant was charged with aggravated battery of a peace officer and two related misdemeanor counts. Defendant's bail was set at $50,000; he later moved for a reduction of that amount. The trial court granted the motion but added a requirement that defendant be placed on a Secure Continuous Remote Alcohol Monitoring (SCRAM) device.

¶ 6        On August 3, 2021, defendant entered a guilty plea to aggravated battery of a peace officer. In exchange for the plea, the State agreed defendant would receive a sentence of 33 months' probation and would serve 180 days in jail. The agreement further required the dismissal of the misdemeanor charges and a petition to revoke probation in another case. The trial court accepted the plea. It advised defendant that the conditions of his probation required that he:

>         (1) not violate any criminal law;
>
>         (2) submit to DNA testing;
>
>         (3) not leave Illinois without consent of the court or the probation
>     department;

(4) report to and appear before probation officers as directed and cooperate in any mandatory transfer of probation.

(5) surrender any firearms owner's identification card and would not possess any dangerous weapons;

(6) allow the probation officer to visit his home, truthfully answer all the officer's questions, and notify the officer of any change of address within 24 hours of the change;

(7) obtain a substance abuse evaluation within 30 days of the judgment, then would begin any recommended treatment and would provide proof of successful completion of the treatment recommendations by March 2022;

(8) not use or possess cannabis or controlled substances without a doctor's prescription and not consume or possess alcohol;

(9) submit to any random drug or alcohol testing required by the probation department; and

(10) remain on SCRAM monitoring, which had been a condition of his release on bail.

The first nine conditions appeared in the main sentencing order. The requirement for SCRAM monitoring appeared in a separate SCRAM order. That order stated that SCRAM monitoring was a "voluntary" term of defendant's sentence and that he "agree[d] to comply with the SCRAM program."

¶ 7        According to the factual basis given by the State, on January 23, 2021, Jo Daviess County sheriff's deputies were dispatched to a bar based on a report of an intoxicated person who refused to leave. The dispatcher said the person was reported to be hitting the bar countertop,

spitting at employees, yelling, and "acting in an unruly manner." Arriving at the bar, the deputies found defendant on the floor. He smelled strongly of alcohol and his speech was slurred. The deputies escorted defendant to the squad car, and then ordered him to separate his feet. He refused to comply. He started yelling at one of the deputies, "made contact with [that deputy's] leg," and spat at him. The spit landed on the deputy's ballistic vest.

¶ 8        On November 19, 2021, the State filed petition to revoke defendant's probation. As set out in the second amended petition, filed December 29, 2022, the allegations against defendant were that he failed to:

> (1) report charges filed against him in Iowa to the probation department;
>
> (2) report to the probation department as directed in that he had no contact with the department from October 2021 through November 2022;
>
> (3) obtain a substance abuse evaluation within 30 days of his probation order; and
>
> (4) appear for a mandatory drug test on September 30, 2021.

¶ 9        Defendant first appeared in court on the State's petition on December 5, 2022.

¶ 10        The State's sole witness at the revocation hearing was Justin Bauer, defendant's probation officer. Bauer testified he had an initial meeting with defendant at which he and defendant reviewed the terms of probation. Based on defendant's risk level, Bauer decided he should meet with defendant every two weeks and speak with him by telephone more frequently. He also required defendant to appear for drug and alcohol testing on his demand.

¶ 11        Defendant failed to come for one such required test on September 30, 2021. Bauer explained how and why he scheduled that test:

"I had spoken to [defendant] on September 28th. [He] admitted to me that he was not residing at the residence in Fulton[, Illinois, in Whiteside County,] that he was allowed to travel to due to a conflict that him and his wife had. He told me then on that day, the 28th, that he was coming back to Hanover[, Illinois, in Jo Daviess County] to move back into the apartment that he was living at when he was sentenced to probation in Jo Daviess County. On the 28th we set up an appointment at his apartment complex, in the afternoon. He did not show up for that appointment. And I then called him on the 29th, the following day, and told him he was to report to a mandatory drug test in my office on September 30th at eight o'clock, to which he did not show for."

The last time Bauer spoke directly with defendant was on September 28, 2021. When Bauer called defendant on September 29, he left a voicemail directing defendant to come to the probation office on September 30.

¶ 12       Bauer testified that he usually contacted defendant by phone; defendant had provided an e-mail address, but Bauer was unsure whether defendant used it. He had no verification that defendant received the voicemail.

¶ 13       Bauer did not attempt any follow-up with defendant after the missed appointments. Defendant had received permission to move to Fulton, and the process of transferring his probation supervision to Whiteside County was underway. To complete the transfer, defendant needed to show proof of his residence in Fulton. Defendant's last appointment was to supply that documentation. Defendant did not provide the required documentation, so the transfer was in "a holding pattern."

¶ 14        The State and defense jointly introduced an exhibit which Bauer testified appeared to be a substance abuse evaluation of defendant conducted by Sinnissippi Centers, Inc. (Sinnissippi). Bauer stated he had not seen the document before that day, but he agreed that, if it was what it appeared to be, it would show that defendant had obtained a timely substance abuse evaluation. The record does not fully explain why the probation department did not receive the evaluation.

¶ 15        Bauer testified he had asked defendant to submit to random drug tests "many" times. On cross-examination, he stated that defendant had submitted to "five or six" tests, all of which had been negative. The only time defendant failed to appear *for testing* was September 30, 2021. The only other failure to appear of any kind for which the State presented evidence was defendant's failure to be present at his Fulton apartment for the visit Bauer had scheduled for September 28, 2021. Bauer scheduled the drug test in response to that missed visit. Further, on September 28, defendant had told Bauer he had relapsed—he had started drinking alcohol again. That was why Bauer wanted to meet with him on September 28.

¶ 16        Bauer stated that he was aware defendant was on SCRAM monitoring, but he testified that he had "mistakenly" removed the monitor on September 1, 2021. Defendant called him to ask if it could be removed; Bauer incorrectly believed the monitoring was voluntary and acceded to defendant's request.

¶ 17        The State conceded it had demonstrated defendant's compliance with the requirement to get a substance abuse evaluation and that it had presented no evidence of his failure to report a new charge filed against him in Iowa.

¶ 18        The trial court found the State had proven only the allegation that defendant had violated his probation by failing to submit to a drug test on September 30, 2021. However, the

court also commented on defendant's failure to contact his probation officer after the missed appointments:

"To cut to it, looking at the Amended Petition, there are four categories of alleged violations. The State concedes there [*sic*] are not anything even close to supporting proof of the alleged violations [of failing to obtain a substance abuse evaluation and failing to report a new charge]. So I'm not going to waste time with those.

With respect to the remaining two let me make an observation, it is not lost on me that the original Petition for Revocation was filed November 19 of '21. I would characterize that as relatively swiftly after [defendant] demonstrated very clearly that he had no interest in complying with the spirit of his Probation Order. He wasn't about to report to his Probation Order. That warrant wasn't executed for thirteen months. *So that's a blatant violation and aggravating in the legal sense.* I'm making that observation to get to this: I agree *** [defendant] failed to report as directed, specifically, having no contact from October '21 to November '22. Again, this is a revocation proceeding, the process due to a Defendant is much less than with respect to a pending criminal charge.

I'm turning now to the alleged failure to submit to random drug testing: by specifically failing to report September 30 of '21. [Defendant] was told in a reasonable means and he did not comply. That's proved.

I could draw an inference on the basis of the evidence, as I understood it, that it was implicit in Mr. Bauer's interactions and it's explicit in the Order, that [defendant] was directed to report to his probation officer from the period from October '21 until November '22 but I'm just the judge. I don't operate on the basis

of what could be inferred when there could have been evidence presented by the State to support that allegation. Any person of commonsense would recognize that this is a glaring violation of the purpose of the Probation Order but it wasn't proved. So what we have here, in my view, is proof that [defendant] violated his probation by failing to submit to the September 30, 2021, test." (Emphasis added.)

¶ 19　　The resentencing hearing took place in February 2023. The parties agreed the presentencing investigation report, which Bauer had prepared, was accurate. Defendant was then 48 years old and married with two young children. He had 22 prior cases resulting in convictions, of which 7 were felony cases. He had been sentenced to imprisonment in the Illinois Department of Corrections (DOC) five times. He had had previously received five sentences of probation. One such sentence was in Rock Island County. His probation there had not concluded. Two of his sentences of probation had ended in revocations, and he had been sentenced to DOC both times. Three of the offenses were forms of battery and one was a residential burglary.

¶ 20　　In the presentencing investigation report, Bauer stated that defendant had admitted he had started drinking—after a monthlong abstinence—the same day Bauer mistakenly removed the SCRAM monitor. He removed the monitor because defendant said the monitor fees were a source of financial distress. Bauer also learned that defendant's wife had kicked him out of the house when she discovered that he was drinking. Bauer agreed with defendant's assessment that most of his difficulties stemmed from his alcohol abuse. He further noted defendant had never had substance abuse treatment. He believed defendant might have been successful on probation had he stayed on the SCRAM monitor.

¶ 21　　The report explained that defendant was on probation in both Jo Daviess County and Rock Island County when he received preliminary permission to move to Fulton in Whiteside

County. Bauer called defendant to tell him that he needed to be in contact with the Rock Island County probation department before he could complete his move to Whiteside County. Defendant did not respond to the call. Although a warrant for defendant's arrest based on the original petition to revoke probation was issued on November 19, 2021, defendant was not arrested until December 5, 2022.

¶ 22 According to defendant's statements during the presentence investigation, he was placed in foster care when he was six years old. His foster parents adopted him when he was 11, but when he was approximately 14, they placed him in a mental hospital for a year and relinquished their custody of him. He was then placed in a boys' home. When he was 16, he ran away from the home. He lived first with an aunt and then with his biological father. Defendant reported being involved in two major traumatic incidents: (1) in 2018, when he confronted a person "lurking around" his neighborhood, that person stabbed him multiple times and tried to run him over with a vehicle and (2) in 2007, a drunk driver hit a car in which he was the passenger. The collision killed both the drunk driver and defendant's brother-in-law, who was the driver of the car in which defendant was riding. Defendant suffered serious injuries. His brother-in-law died in his arms. He believed these incidents had caused him to have post-traumatic stress disorder (PTSD), a diagnosis supported by the Sinnissippi evaluation. In 2018, defendant spent time in a psychiatric hospital because he felt as though "he was 'losing his mind.' "

¶ 23 Defendant reported that he had started to use alcohol at age 14 or 15 and that he always had "problems" with alcohol use. Those problems increased as he grew older. He reported that once he started using alcohol, he could not stop. Alcohol made him " 'feel alive.' " He believed he had committed "most, if not all" of his crimes while under the influence of alcohol. Defendant reported that he had previously been addicted to cocaine and had committed crimes to support that

addiction. He ceased using cocaine in 2007 after he overdosed, but his use of alcohol then increased.

¶ 24　　　　The trial court sentenced defendant to five years' imprisonment, concluding that the only way to keep defendant from committing more crimes was to keep him incarcerated:

"THE COURT: It[—your criminal history—]starts roughly when you are twenty years-old. And I'm going to make this assumption, alcohol has played a factor in every crime you have committed. In other words, the real underlying problem is alcohol abuse and that is unfortunate. But that's not to say that you're not a criminal. You're a criminal who get [*sic*] intoxicated and does stupid criminal things. And now your [*sic*] forty-eight years-old [*sic*].

If this was the original sentencing hearing, as happened at the original sentencing hearing, I'd be putting you on probation. We did that. I think it would be fair to characterize what we did was an abject failure which is on you.

Again, I'm going to assume the reason probation was just a miserable failure was because once you got off that SCRAM you were drinking.

DEFENDANT: Right.

THE COURT: And you were gone a long time. There was a warrant out for you for a long time. And I do remember the evidence that the probation revocation hearing you were not complying with a single term of probation. To put it another way, we tried and it didn't work.

I don't agree with the State's assessment that you cannot be rehabilitated. *** Rehabilitation should be the first and foremost objective in imposing criminal

sentence. But depending on the circumstances of a given case it can be reprioritized at least with respect to deterrence and retribution.

You are being resentenced for the charge of aggravated battery. [The sentence can be] between three and seven years. Frankly, because I do not consider that probation, which has been tried, is even remotely viable here, because of the criminal history that I am looking at here, it saddens me that there is no other viable sentence to be imposed here, other than prison. It is purely a question of what is the appropriate prison term: and the answer to that is it's going to be five years with credit for all the time that is has been served in connection with this charge up to this point."

¶ 25    The trial court advised defendant he had a right to appeal but did not advise defendant of the need to file a postsentencing motion to preserve issues of sentencing. Defendant said he wanted to file an appeal immediately, and defense counsel interjected that he would like to talk to defendant first. Defendant responded: "I want [it] done before we leave this courtroom." Defense counsel said he could not "do a notice of appeal right now." Defendant said he wanted one done before he went to DOC.

¶ 26    This appeal followed.

¶ 27                        II. ANALYSIS

¶ 28    On appeal, defendant argues first that the trial court violated his due process rights by inaccurately recalling the evidence presented at the probation revocation proceeding. He contends that, although the evidence showed he had complied with some terms of his probation, the court "misstated the hearing testimony and incorrectly asserted that [he] had not complied 'with a single term of probation.' " He concedes he forfeited this issue by failing to raise it in a posttrial

motion but argues we should review the matter as plain error. He further maintains that the evidence he violated probation was inadequate because the evidence did not show it was more likely than not that he received the voicemail from Bauer telling him he had to report for a drug test. We address defendant's sufficiency-of-the-evidence claim first, as, were we to hold the evidence was insufficient, we would have no reason to address defendant's sentencing-error claim.

¶ 29                    A. The Sufficiency of the Evidence

¶ 30        Defendant argues the State failed to prove he had acceptable notice of the September 30, 2021, test and thus failed to prove he violated the requirement he submit to testing on demand. He observes that his only notice of the test was the September 29, 2021, voicemail from Bauer, who did not testify to further details about this call. He concedes that the standard of evidence for a probation violation is a preponderance of the evidence but argues, because the State did not establish at what number Bauer left his message or the time he called, the evidence did not satisfy that standard. Defendant's argument appears to concede that the State need not show that he *received* Bauer's September 29 message. However, his argument analogizes notice of mandatory testing to a defendant's due process right to proper notice of discretionary terms of probation, implying that inadequate notice of the September 30 test would be inconsistent with due process. He suggests that the paucity of evidence of how Bauer made the September 29 call requires us to conclude that State failed to show he had acceptable notice of the September 30 test.

¶ 31        For the reasons that follow, the State's evidence was sufficient given its burden to establish the probation violation by a preponderance of the evidence. We note that the State was not required to establish any *mens rea* for defendant's failure to submit to the test. Although defendant's contention that State must show that the way a probation department notified a probationer of a drug or alcohol test was reasonable is plausible, that issue is immaterial here. Even

- 12 -

if we assume, *arguendo*, that the State bore that additional burden, the evidence below was sufficient.

¶ 32                                    1. *The Standard of Review*

¶ 33        The State's burden when it seeks to revoke a defendant's probation is to show the occurrence of the probation violation it alleged by the preponderance of the evidence. *People v. Lindsey*, 319 Ill. App. 3d 586, 590 (2001). " 'A preponderance of the evidence is evidence that renders a fact more likely than not.' " *People v. Brown*, 229 Ill. 2d 374, 385 (2008) (quoting *People v. Urdiales*, 225 Ill. 2d 354, 430 (2007)). "When the trial court finds that a violation of probation has been proved, a challenge to the sufficiency of the evidence [based on the court's findings of disputed facts] will succeed only if the trial court's finding is against the manifest weight of the evidence." *People v. Colon*, 225 Ill. 2d 125, 158 (2007). " 'A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence.' " *People v. Colquitt*, 2013 IL App (1st) 121138, ¶ 28 (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995)).

¶ 34        2. *The Evidence, Including Evidence of Reasonable Notice, Was Sufficient*

¶ 35        The State presented sufficient evidence to show defendant violated his probation. Defendant does not dispute that he failed to appear for drug and alcohol testing on September 30, 2021. Thus, the only issue was whether he had reasonable notice. We conclude that the State's evidence was adequate to establish the reasonableness of the notice.

¶ 36        At a probation revocation hearing, the trial court is "entitled to draw reasonable inferences and reach conclusions therefrom." *People v. Bonney*, 251 Ill. App. 3d 921, 924 (1993). Bauer testified that, before September 30, he had summoned defendant for testing "five or six" times and that defendant appeared each time. That evidence established that Bauer had a reliable

method for contacting defendant. Despite the State's failure to elicit testimony from Bauer about the details of his call to defendant on September 29, 2021, the court could infer that it was more likely than not that Bauer used that established method of communication on September 29.

¶ 37     Defendant was aware that he had failed to meet with Bauer on September 28, and he must have expected further contact from Bauer. As a rule, "a criminal *mens rea* is not required for a probation violation"; financial conditions aside, a nonculpable probation violation can be a basis for revoking probation. *Lindsey*, 319 Ill. App. 3d at 591. Thus, defendant's failure to submit to the test would be a probation violation even if it was the result of defendant's negligent failure to remain in contact with Bauer.

¶ 38     For the reasons stated, we conclude the trial court's decision that it was more likely than not that defendant violated the terms of his probation was not against the manifest weight of the evidence.

¶ 39                    B. Plain Error in Sentencing

¶ 40     Next, defendant contends that the trial court's finding that he "w[as] not complying with a single term of probation" was plain error. We conclude no clear or obvious error occurred—indeed, there may have been no error at all. We thus decline to review defendant's claim of sentencing error as plain error.

¶ 41     As a rule, "[t]o preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial [or postjudgment] motion." *People v. Sebby*, 2017 IL 119445, ¶ 48. Failure to do either results in forfeiture of the claim. *Id.* Defendant concedes he forfeited the matter of the trial court's statement about his performance by failing to raise it in a postsentencing motion, he but contends we can review his claim under the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan 1, 1967) ("Plain errors or

defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.").

¶ 42                                     1. *Plain Error*

¶ 43        Our supreme court holds that reviewing courts may consider claims of error under the plain error doctrine when the error is clear or obvious, stating:

> "[T]he plain error rule allows reviewing courts discretion to review forfeited errors under two alternative prongs: (1) when a *clear or obvious* error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a *clear or obvious* error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Emphases added.) *People v. Moon*, 2022 IL 125959, ¶ 20.

¶ 44        We further note that, even outside the context of a plain-error determination, a reviewing court should not deem a trial court to have made an error of fact unless the record shows that such an error occurred. For instance, reviewing courts presume that a trial court has considered all mitigating factors at sentencing; this presumption can only be overcome if the defendant can affirmatively show that the court failed to do so. *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 209. The issue here, whether the court failed to consider defendant's partial probation compliance, is similar.

¶ 45        2. *There Was No Clear or Obvious Error in the Trial Court's Ruling*

¶ 46        Defendant asserts that, at the resentencing hearing, the trial court wrongly found he "had not complied 'with a single term of probation.' " If this were the court's finding, we would

agree that it was a clear error. For instance, the court recognized at the revocation hearing that defendant had obtained a substance abuse evaluation. But we think the court's words may fairly be read to apply to defendant's lack of compliance during the 13 months after he ceased to report to probation. The court stated, "[Y]ou *were not complying* with a single term of probation." (Emphasis added.) Grammatically, "were not complying"—in contrast with "did not comply"—implies an ongoing state. Thus, the court was not necessarily saying defendant never complied with any term of probation. Rather, it may merely have been saying that, both when defendant was rearrested and for most of his probation, he "*w*[*as*] *not complying* with a single term of probation." (Emphasis added.) This meaning would be consistent with the court's recognition that defendant did comply with some terms early on.

¶ 47        The trial court's comments at the revocation hearing of defendant's long-term lack of compliance suggests it was concerned with that at sentencing as well. At the probation revocation hearing, the court emphasized that it deemed defendant's 13-month disappearance an aggravating circumstance despite the State's failure to demonstrate that failure to report was a probation violation:

> "So [defendant's disappearance is] a blatant violation and aggravating in the legal sense. I'm making that observation to get to this: I agree *** [defendant] failed to report as directed, specifically, having no contact from October '21 to November '22. ***.
>
>         ***
>
> *** Any person of commonsense would recognize that this is a glaring violation of the purpose of the Probation Order but it wasn't proved."

¶ 48　　　　Because the trial court's statement was consistent with recognizing defendant's partial compliance, the statement was not clear or obvious error. Where no clear or obvious error exists, there is no plain error. *Moon*, 2022 IL 125959, ¶ 22. Accordingly, we must honor defendant's procedural forfeiture.

¶ 49　　　　　　　　　　　　III. CONCLUSION

¶ 50　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 51　　　　Affirmed.